


IN THE EASTERN CARIBBEAN SUPREME COURT
HIGH COURT OF JUSTICE
BRITISH VIRGIN ISLANDS
COMMERCIAL DIVISION

CLAIM NO: BVI HC (COM) 2010/ 107

B E T W E E N:

Trade and Commerce Bank (In Official Liquidation)
(a company incorporated in the Cayman Islands)

Claimant

and

Kesten Development Corporation

Defendant

## STATEMENT OF CLAIM

1. Trade and Commerce Bank ("TCB") is a Cayman Islands company that was placed into liquidation on 29 August 2002 by order of the Grand Court of the Cayman Islands. G. James Cleaver and Richard Fogerty are the Joint Official Liquidators of TCB (the "Liquidators"). The Liquidators seek to recover the assets of TCB for distribution in accordance with the statutory insolvency regime of the Cayman Islands.

2. Kesten Development Corporation ("Kesten") is a British Virgin Islands company that was incorporated in 1994 and struck from the register in May 2001. On or around 16 August 2010, Kesten was restored to the register.

3. From its incorporation until in or about 1999 Kesten along with its Brazilian parent company Turist-Câmbio Viagens e Turismo Ltd ("Turist-Câmbio"), ran an illegal black market money exchange and money laundering business in the United States of America and various countries in South America. During this time, Kesten illegally laundered billions of dollars for various South American smugglers and criminals using its account at MTB Bank in New York, NY.

1



4. Kesten's money laundering and exchange operation began shortly after Kesten was incorporated in the British Virgin Islands by the opening of an account with MTB Bank in New York named "Venus" with the account number 030-101107 (the "**Venus Account**") on or about 12 July 1995. Kesten used the Venus Account to accept illicitly obtained U.S. dollars from criminals. In exchange for these U.S. dollars, Turist-Câmbio made payments to criminals in local currency as described above. Kesten also used the Venus Account to accomplish the second half of the money laundering operation by wiring payments of U.S. dollars to vendors for goods on behalf of foreign businesses. Those businesses purchased the U.S. dollars by paying local currency to Turist-Câmbio. Kesten was, therefore, able to collect illicitly gained U.S. dollars and make wire payments on behalf of foreign businesses while Turist-Câmbio collected local currency from the foreign businesses and used it to pay the criminals for the U.S. dollars deposited in the Venus Account. Through this system, Kesten and Turist-Câmbio were able to run a money laundering and exchange operation that saw billions of U.S. dollars move through Kesten's account.

5. This scheme came to an end in early 1999 when the U.S. Government seized the Venus Account due its ties to illegal funds. In conjunction with the seizure, the U.S. Government also brought criminal charges against Kesten's parent company, Turist-Câmbio for operating as an unlicensed money remitter and against Maria Carolina Nolasco, the banker who controlled the Venus account, for her assistance in the money laundering activities that occurred in the Venus Account. Nolasco was convicted of both money laundering and tax evasion in relation to her actions on behalf of Kesten and sentenced to 30 months in prison. In Brazil, the Brazilian authorities forced Turist Câmbio to cease business due to its illegal operations as a black-market money exchanger and brought criminal charges against its principals in Brazil.

6. TCB was a company incorporated in the Cayman Islands, in 1988, to provide off-shore banking services to the Velox Group. At all material times members of the Peirano family were directors and/or agents of TCB and, as such, owed fiduciary duties to TCB to act in its best interests at all times. The Velox Group was a collection of entities controlled by Jorge Peirano Facio and his sons Juan Peirano, Dante Peirano, Jose Peirano, and Jorge Peirano Basso (together, the "Peiranos"). Through the Velox Group, the Peiranos controlled over 40% of the banks in Uruguay. The Velox Group also included banks in Argentina and Paraguay and money exchange houses throughout South America

as well as various Cayman Islands and British Virgin Island based entities. In addition to the Velox Group, TCB's clients included individuals and companies from Argentina, Uruguay, Paraguay, Chile, and Brazil.

7. TCB provided deposit accounts, payable-through accounts, custody accounts, Gold Visa products, term deposit accounts, loan accounts, fixed-term loans, investment banking, and exterior-commerce services. Its operations were run out of Montevideo, Uruguay, and movement of its funds was accomplished through correspondent bank accounts in New York, including accounts at Citibank and Swiss Bank. In 2002, it was discovered that the Peiranos had caused TCB to create two separate sets of accounts, one on-the-books and one off-the-books. The Peiranos used the on-the-books accounts to conceal the scheme from TCB's auditors and others. However, the off-the-books accounts revealed that the Peiranos looted over $800 million from TCB. After this scheme came to light, TCB was put into liquidation in the Cayman Islands.

8. The Peiranos stole TCB's funds to finance their investments in the Velox Group and other entities as well as to support their lifestyle. To fund their scheme, the Peiranos solicited funds from TCB's customers who thought they were placing their funds in interest-bearing accounts, but instead the Peiranos were looting the funds for their personal use. The Peiranos also perpetrated a scheme in which their banks in Argentina, Uruguay, and Paraguay took deposits from their customers and loaned them to TCB in exchange for a note with a guaranteed rate of return. Thus, TCB held the money of its own customers along with the money of the other Velox Group banks' customers, with the Peiranos having access to all such funds. TCB deposited these funds into correspondent bank accounts, such as Citibank and Swiss Bank. The Peiranos then used the off-the-books accounts at TCB to launder money from these correspondent accounts through various third parties and Velox Group shell entities.

9. The Peiranos' scheme depended on the customers of TCB and the other Velox Group banks leaving their deposits in the bank, because an attempt to withdraw the funds would expose the fact that the banks did not actually have the money available for withdrawal. The scheme unraveled in 2001, when the Argentine economy crashed. As Argentine

faith in the Argentine Peso fell, a run on the banks ensued. In response, the Argentine Government effectively closed the banks, limiting withdrawals to insubstantial amounts.

10. Argentines then went to neighboring Uruguay to withdraw their funds from Uruguayan banks, including those owned by the Peiranos. TCB and the Velox Group banks were unable to honor these withdrawal requests because the Peiranos had stolen their funds. The fraud was exposed and all of the Peiranos, except Juan Peirano Basso, were charged with various financial crimes by the Uruguayan authorities and were put in prison in Uruguay. Juan Peirano Basso escaped to the U.S., but in 2008, he was extradited and is now incarcerated in a Uruguayan prison as well pending trial.

11. All that was left behind by the Peiranos were approximately US$800 million in obligations to TCB's former customers and Velox Group banks.

12. The Peiranos used a related entity, Tansy S.A ("Tansy"), and Kesten to launder TCB's funds. Kesten knowingly or recklessly assisted the Peiranos in this laundering by accepting TCB's stolen funds in the Venus Account, knowing there was no business purpose for the transaction.

13. Tansy was a Brazilian money remitter with operations in the Uruguayan free-trade zone and Montevideo, Uruguay. There was significant overlap and interaction between Tansy and TCB. The Peiranos partially owned and heavily influenced Tansy's operations, which, like TCB's, were located in Montevideo. Jorge Navarro, an officer at TCB, signatory on many of TCB's correspondent accounts, and close associate of Juan Peirano Basso, was associated with Tansy.

14. After the Peiranos' scheme was shut down, Navarro opened his own accounting firm and housed Tansy's operations inside its offices in Montevideo. Additionally, through its various accounts, Tansy participated in the laundering of hundreds of millions of U.S. dollars from TCB through third parties and shell entities. In excess of US$136 million was stolen from TCB from June 1998 to January 1999 and transferred to Tansy with no apparent business purpose or justification: TCB received nothing in exchange for those

transfers and these transfers were made by the Peiranos in breach of their fiduciary duties to act at all times in the best interest of TCB.

15. In addition to its involvement with TCB, Tansy had relationships with individuals and entities involved in black-market money-remitting. Tansy transferred at least US$500,000 to Maria Carolina Nolasco, the individual who was arrested in connection with the prosecution of Kesten's parent company, Turist-Câmbio for assisting in a black-market money exchange operation. She was paid for illegally transmitting money for currency-exchange houses and money-transmitting businesses in Brazil using dozens of bank accounts she controlled, including the Venus Account. The transfers from Tansy were made for her participation in the illegal money exchange operation.

16. As setout hereinbefore, Kesten's business was in illegal money exchange and laundering. For that business to work, Kesten needed access to U.S. dollars. TCB provided Kesten with that access. As with Tansy, there were connections between the Velox Group and Kesten. For example, Rosario Guadalupe Villarreal Pujado, a Uruguayan banker, managed one of the four Turist-Câmbio branches in Brazil. And, in 1994 Pujado purchased a 50% ownership interest in Turist-Câmbio, Kesten's parent company, which she later sold in 1998. Prior to her work for Turist- Câmbio, Pujado worked for Finambras, a member of the Velox Group that was 84% owned by Jorge Peirano. Additionally, when Kesten was in the process of opening the Venus Account at MTB Bank, the bank sought out references for Kesten's then principal, Antonio Pires de Almeida. Pires de Almeida previously held a bank account at MTB Bank, but moved his business to another bank when MTB Bank sought to put restrictions on his account. However, after he switched banks, the new bank was shut down. When Pires de Almeida sought to open an account for Kesten, he went back to MTB Bank. One of the references that MTB Bank cited as having vouched for Pires de Almeida and Kesten was the Velox Group.

17. Using their connections with Tansy and Kesten, the Peiranos laundered US$15.9 million through the Venus Account. It is evident from copies of the bank statements in respect of

and in relation to the Venus Account to which the Liqudators have access, that from in or around June 1998 to January 1999:

17.1. TCB transferred over US$136 million to Tansy (the "**Tansy Transfer**"); and

17.2. Following the receipt by Tansy of the Tansy Transfer, Tansy transferred US$15,936,369.56 million of that money to Kesten (the "**Kesten Transfer**").

18. The Kesten Transfer allowed the Peiranos to hide their misappropriation of TCB's funds by sending the funds to what appeared to be an unrelated entity. The Kesten Transfer was undertaken gratuitously with no business purpose or justification, and with no consideration given in return to TCB. The sole purpose of the Kesten Transfer was to obfuscate the theft of TCB's funds by the Peiranos.

19. Kesten knowingly received the funds constituting the Kesten Transfer and retained the funds for its own benefit. As a black-market money exchanger, Kesten was fully aware that the funds were the proceeds of the Peiranos' fraud on TCB. Further or in the alternative, even if Kesten was not actually aware of the nature of the funds, it was willfully blind to the obvious illicit nature of the funds and willfully or recklessly failed to make any inquiries as to the source of the funds. Kesten's actions in receiving the funds were dishonest, and aimed at making a profit with a conscious disregard for the harm done to TCB through the misappropriation of its assets.

20. In the premises, Kesten's knowing receipt and retention of the Transfers was and is unconscionable and the Claimant is therefore entitled to restitution of the Kesten Transfer in the sum of US$15,936,369.

AND THE CLAIMANT CLAIMS:

1. Restitution from the Defendant of the sum of US$15,936,369;

2. Costs.

Dated this   day of August 2010

FORBES HARE<br>Legal Practitioners for the Claimant

STATEMENT OF TRUTH

I certify that I believe that the facts stated in this Statement of Claim are true.

*[signature]*

Richard Fogerty

**Joint Official Liquidator of Trade and Commerce Bank**

IN THE EASTERN CARIBBEAN SUPREME COURT
HIGH COURT OF JUSTICE
BRITISH VIRGIN ISLANDS
COMMERCIAL DIVISION



CLAIM NO: BVI HC (COM) 2010/107

BETWEEN:

Trade and Commerce Bank (In Official Liquidation)
(a company incorporated in the Cayman Islands)

**Claimant**

and

Kesten Development Corporation

**Defendant**

---

ORDER

---

Before: The Honourable Justice Edward Bannister QC

Dated: 14 September 2010

Entered: 15 September 2010

UPON hearing William Hare for the Claimant

IT IS HEREBY ORDERED THAT:

1. Judgment be entered for the Claimant, pursuant to Rule 12.4 of the CPR, in default of acknowledgment of service;

2. The Defendant shall pay to the Claimant the sum of US$15,936,369.00; and

3. The Defendant is to pay the Claimant's costs to be assessed.

BY THE COURT

_____
Registrar

**EXHIBIT F**

# Craig Boneau

| | |
|---|---|
| From: | Craig Boneau |
| Sent: | Friday, September 17, 2010 9:11 AM |
| To: | 'Barry Fischer'; de Kluiver, Jack |
| Cc: | William T. Reid, IV; chun@ctwrightlaw.com |
| Subject: | TCB v. Kesten SDNY Bankruptcy Court Pleadings |
| Attachments: | Adversary Complaint for 05-60279.pdf; Exhibit A - BVI Statement of Claim.pdf; Exhibit B - Claim Form.pdf; Exhibit C - Harris Affidavit of Service.pdf; Exhbit D - BVI Judgment.pdf; Exhibit E - TCB v Kesten - Affidavit of Service - Judgment in Default - 15 Sept 2010.pdf |

Jack/Barry,

Please find the pleadings filed in the Southern District of New York Bankruptcy Court yesterday.

Regards,
Craig


**Craig A. Boneau | Associate**
**REID COLLINS & TSAI LLP**
4301 Westbank Drive
Building B, Suite 230
Austin, Texas 78746
512.647.6123 (Direct)
512.647.6100 (Main)
512.647.6129 (Fax)
web | bio | vCard

## AUSTIN | NEW YORK

This message and all attachments are confidential and may be protected by the attorney-client or other privileges. Any unauthorized review, use, disclosure, or distribution is prohibited. If you believe this message has been sent to you in error, please notify the sender by replying to this transmission and delete the message without disclosing it. Thank you.

Pursuant to recently enacted US Treasury Department Regulations, we are now required to advise you that, unless otherwise expressly indicated, any federal tax advice contained in this communication, including attachments and enclosures, is not intended or written to be used, and may not be used, for the purposes of (i) avoiding tax-related penalties under the Internal Revenue Code, or (ii) promoting, marketing, or recommending to another party any tax-related matter addressed herein.



1

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA,       :

        Plaintiff,       :

    v.                              :

$8,221,877.16 IN UNITED STATES :
CURRENCY REPRESENTING:
                                :   Civil Action No. 00-2667(JWB)
$6,871,042.36 CONTAINED IN
ACCOUNT NUMBER 030101107        :
KNOWN AS THE VENUS ACCOUNT,         O R D E R
HELD IN THE NAME OF OR FOR THE :
BENEFIT OF KESTEN DEVELOPMENT
CORP. AT, MTB BANK;             :

$1,345,771.64 CONTAINED IN      :
ACCOUNT NUMBER 12108 KNOWN
AS THE TADELAND ACCOUNT HELD    :
AT FOREX ASSOCIATES WHICH
MAINTAINS AN ACCOUNT AT         :
EAB BANK; and
                                :
$5,063.16 CONTAINED IN ACCOUNT
NUMBER 08-1641-3 IN THE NAME    :
OF OR FOR THE BENEFIT OF
RAMAL VENTURES AT ISRAELI       :
DISCOUNT BANK,
                                :
        Defendants.
                                :

For the reasons set forth in the Court's Opinion filed herewith,

It is on this 6th day of July, 2004,

EXHIBIT H

**ORDERED** that the motion of Kesten Development Corp. and Turist-Câmbio Viagens e Turismo Ltda. (together, "Claimants") for an order pursuant to Federal Rule of Civil Procedure 12(b)(6) dismissing the Amended Verified Complaint for Forfeiture in its entirety, with prejudice, is hereby granted; and it is further

**ORDERED** that the United States is directed to return to Claimants $6,871,042.36 in funds seized from account 030101107 at MTB Bank in New York, New York, and $1,345,771.64 in funds seized from account number 12108 held at Foreign Exchange Trade Associates, Inc. in New York, New York; and it is further

**ORDERED** that the Government's cross-motion to strike the claimants' claim be, and it hereby is, denied.

/s/   John W. Bissell
JOHN W. BISSELL
Chief Judge
United States District Court

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED
JAN 26 2005 14

CLERK, U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, FOR AND ON BEHALF OF THE FEDERAL REPUBLIC OF BRAZIL, <br><br> Applicant, <br><br> v. <br><br> ANTONIO PIRES DE ALMEIDA, REGINA RURIKO INOUE AND ROSELI CIOLFI AS BENEFICIAL OWNERS OF $8,216,814.00 AND ACCRUED INTEREST IN UNITED STATES CURRENCY REPRESENTING: <br><br> $6,871,042.36 (AND ACCRUED INTEREST) FORMERLY CONTAINED IN ACCOUNT NUMBER 030101107, AND KNOWN AS THE VENUS ACCOUNT, HELD IN THE NAME OF OR FOR THE BENEFIT OF KESTEN DEVELOPMENT CORP. AT MTB BANK; <br><br> and <br><br> $1,345,771.64 (AND ACCRUED INTEREST) FORMERLY CONTAINED IN ACCOUNT NUMBER 12108, AND KNOWN AS THE TADELAND ACCOUNT, HELD AT FOREX ASSOCIATES, WHICH MAINTAINED AN ACCOUNT AT EAB BANK; <br><br> Respondents. | Misc. No.: 05-40 <br><br> UNDER SEAL |

## ORDER

This matter having come before this Court on the motion of the United States of America for

a motion for a restraining order pursuant to 18 U.S.C. § 983(j)(1)(A) and 28 U.S.C. § 2467(d)(3)



EXHIBIT I

(B)(I), which provides courts with jurisdiction to enter restraining orders and take such other action in connection with any property or other interest subject to forfeiture in a foreign proceeding to ensure its availability for forfeiture; and

IT APPEARING TO THE COURT THAT:

Through the affidavit of Vladimir Aras, attached to the government's motion, the United States has established that:

1. There is a substantial probability that the prosecutors in Brazil will prevail on the issue of forfeiture with respect to the captioned funds ("the Properties") on the grounds that the Properties constitute the proceeds of offenses under Brazilian law committed by Antonio Pires de Almeida, Regina Ruriko Inoue, Roseli Ciolfi and others; and

2. That a criminal complaint against Antonio Pires de Almeida, Regina Ruriko Inoue, Roseli Ciolfi was obtained on January 24, 2005.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED, PURSUANT TO 18 U.S.C. § 983(j)(1)(A), THAT:

1. The Properties appearing in the caption of this Order are RESTRAINED.

2. All persons, including Antonio Pires de Almeida, Regina Ruriko Inoue, and Roseli Ciolfi, their agents, servants, employees, attorneys, family members and those persons in active concert or participation with them, and anyone holding any interest in the Properties, be and are hereby ENJOINED AND RESTRAINED from selling, assigning, pledging, distributing, giving away, encumbering or otherwise participating in the disposal of (by transfer of stock or otherwise) or removal from the jurisdiction of this Court, or from any checking or savings account, any interest, direct or indirect, in the Properties, without prior approval of the Court upon notice to the United States and an opportunity for the United States to be heard, except as specified in this Order.

3. The Properties shall be transferred to and shall remain in a seized assets account designated by the United States Marshals Service until further order by this Court.

4. The terms of this Order shall remain in full force and effect until the Brazilian criminal case initiated on January 24, 2005 against Antonio Pires de Almeida, Regina Ruriko Inoue, and Roseli Ciolfi is concluded and any forfeiture judgment obtained therein has been satisfied or until further order by this Court.

5. Within ten days of the date of this Order, the United States Department of Justice, Asset Forfeiture and Money Laundering Section, shall provice notice of the Court's Order upon Antonio Pires de Almeida, Regina Ruriko Inoue, and Roseli Ciolfi, and, as applicable, to anyone holding any interest in the Properties, in accordance with Title 18, United States Code, Section 983(a).

Dated this 26th day of January 2005.

Royce C. Lamberth
~~THOMAS F. HOGAN~~
Acting Chief Judge
United States District Court
District of Columbia

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

SEP 2 2 2010

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

| | |
|---|---|
| UNITED STATES OF AMERICA<br>FOR AND ON BEHALF OF THE<br>FEDERAL REPUBLIC OF BRAZIL<br><br>APPLICANT,<br><br>ANTONIO PIRES DE ALMEIDA,<br>REGINA RURIKO INOUE AND<br>ROSELI CIOLFI AS BENEFICIAL<br>OWNERS OF $8,216,814.00 AND<br>ACCRUED INTEREST IN UNITED<br>STATES CURRENCY REPRESENTING:<br><br>$6,871,042.36 (AND ACCRUED<br>INTEREST) FORMERLY CONTAINED<br>IN ACCOUNT NUMBER 030101107<br>AND KNOWN AS THE VENUS<br>ACCOUNT, HELD IN THE NAME OF<br>OR FOR THE BENEFIT OF KESTEN<br>DEVELOPMENT CORP. AT<br>MTB BANK;<br><br>and<br><br>$1,345,771.64 (AND ACCRUED<br>INTERET) FORMERLY CONTAINED<br>IN ACCOUNT NUMBER 12108<br>AND KNOWN AS THE TADELAND<br>ACCOUNT, HELD AT FOREX<br>ASSOCIATES, WHICH MAINTAINED<br>AN ACCOUNT AT EAB BANK;<br><br>RESPONDENT | Misc. No. 1:05-mc-00040 (RCL) |

ORDER

Upon consideration of United States' Motion to Vacate Restraining Order, and the entire record in this case, it is this _22nd_ day of _September_, 2010, hereby

**EXHIBIT J**

ORDERED that United States' Motion to Vacate Restraining Order be, and hereby is, GRANTED; and it is

FURTHER ORDERED that this Court's restraining order of January 26, 2005 be, and hereby is, VACATED; and it is

FURTHER ORDERED that the United States provide notice of this Order to all persons provided notice of this Court's January 26, 2005 Order.

*Royce C. Lamberth*
The Honorable Royce C. Lamberth
Chief Judge
United States District Court for the District of Columbia

# United States District Court
### DISTRICT OF NEW JERSEY

In the Matter of the Seizure of

UNITED STATES CURRENCY OR OTHER MONETARY INSTRUMENTS CONTAINED IN ACCOUNT NUMBER 030101107 IN THE NAME OF OR FOR THE BENEFIT OF KESTEN DEVELOPMENT CORP. LOCATED AT MTB, 90 BROAD STREET, NEW YORK, NEW YORK

**SEIZURE WARRANT**

CASE NUMBER: 99-3026

TO: Any Special Agent with the Drug Enforcement Administration and any Authorized Officer of the United States Affidavit(s)

having been made before me by Christopher Roberts, who has reason to believe that there is now certain property which is subject to forfeiture to the United States, namely

UNITED STATES CURRENCY OR OTHER MONETARY INSTRUMENTS CONTAINED IN ACCOUNT NUMBER 030101107 IN THE NAME OF OR FOR THE BENEFIT OF KESTEN DEVELOPMENT CORP. LOCATED AT MTB, 90 BROAD STREET, NEW YORK, NEW YORK

I am satisfied that the affidavit(s) and any recorded testimony establish probable cause to believe that the property so described is subject to seizure and that grounds exist for the issuance of this seizure warrant and the Court has jurisdiction pursuant to 28 U.S.C. § 1355(b).

YOU ARE HEREBY COMMANDED to seize within 10 days the property specified, serving this warrant and making the seizure (in the daytime - 6:00 A.M. to 10:00 P.M.) ~~at any time in the day or night as I find reasonable cause has been established~~, leaving a copy of this warrant and receipt for the property seized and prepare a written inventory of the property seized and promptly return this warrant to Honorable Stanley R. Chesler as required by law.

January 15, 1999  11:05 AM
Date and Time Issued

at Newark, New Jersey

Honorable Stanley R. Chesler, Magistrate Judge
Name and Title of Judicial Officer

Signature of Judicial Officer

**EXHIBIT K**

# United States District Court
## DISTRICT OF NEW JERSEY

In the Matter of the Seizure of

| | |
|---|---|
| UNITED STATES CURRENCY OR OTHER MONETARY INSTRUMENTS HELD IN ACCOUNT NUMBER 12108 IN THE NAME OF OR FOR THE BENEFIT OF TADELAND HELD AT FOREX ASSOCIATES, 310 MADISON AVENUE, NEW YORK NEW YORK WHICH MAINTAINS AN ACCOUNT AT EAB BANK, 1107 BROADWAY, NEW YORK, NEW YORK | **SEIZURE WARRANT**<br>CASE NUMBER 99-3014 |

TO: Any Special Agent with the Drug Enforcement Administration and any Authorized Officer of the United States Affidavit(s) having been made before me by Christopher Roberts, who has reason to believe that there is now certain property which is subject to forfeiture to the United States, namely

UNITED STATES CURRENCY OR OTHER MONETARY INSTRUMENTS HELD IN ACCOUNT NUMBER 12108 IN THE NAME OF OR FOR THE BENEFIT OF TADELAND HELD AT FOREX ASSOCIATES, 310 MADISON AVENUE, NEW YORK NEW YORK WHICH MAINTAINS AN ACCOUNT AT EAB BANK, 1107 BROADWAY, NEW YORK, NEW YORK



FILED
JAN 13 1999
Stanley R. Chesler
U.S. Magistrate Judge

I am satisfied that the affidavit(s) and any recorded testimony establish probable cause to believe that the property so described is subject to seizure and that grounds exist for the issuance of this seizure warrant and the Court has jurisdiction pursuant to 28 U.S.C. § 1355(d).

YOU ARE HEREBY COMMANDED to seize within 10 days the property specified, serving this warrant and making the seizure (in the daytime - 6:00 A.M. to 10:00 P.M.) ~~(at any time in the day or night as I find reasonable cause has been established)~~, leaving a copy of this warrant and receipt for the property seized and prepare a written inventory of the property seized and promptly return this warrant to Honorable Stanley R. Chesler as required by law.

January / 1999   /s:20 pr
Date and Time Issued

at Newark, New Jersey

Honorable Stanley R. Chesler, Magistrate Judge
Name and Title of Judicial Officer

Signature of Judicial Officer