FRIEDMAN KAPLAN SEILER & ADELMAN LLP
Emily A. Stubbs (ES 5458)
1633 Broadway
New York, NY 10019-6708
212-833-1100 (telephone)
212-833-1250 (facsimile)

THE BARRY FISCHER LAW FIRM LLC
Barry R. Fischer (BF 0274)
550 Fifth Avenue, 6th Floor
New York, NY 10036-5007
212-840-9300 (telephone)
212- 840-9323 (facsimile)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
:
In re: :
:
TRADE AND COMMERCE BANK (IN : Chapter 15
LIQUIDATION) : Case No. 05-60279 (SMB)
:
Debtor, :
:
---------------------------------------------------------------x
RICHARD FOGERTY, as Joint Official Liquidator of :
Trade and Commerce Bank, : Adv. Proc. No. 10-03611 (SMB)
:
Plaintiff, :
:
- against - :
:
KESTEN DEVELOPMENT CORP., :
:
Defendant. :
---------------------------------------------------------------x

**OBJECTION OF BARRY FISCHER LAW FIRM LLC AND
FRIEDMAN KAPLAN SEILER & ADELMAN LLP TO PLAINTIFF'S MOTION
FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY
<u>INJUNCTION AND PETITION TO ENFORCE ATTORNEY'S LIEN</u>**

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

PROCEDURAL AND FACTUAL BACKGROUND ........................................................ 2

    The Government's Seizure Of The Funds. ..................................................................... 2

    Chief Judge Bissell Dismisses With Prejudice The Forfeiture Proceeding. .................... 5

    The Government Files A Complaint Seeking A Civil Penalty
    Pursuant To 18 U.S.C. § 1956(b), Which Also Is Dismissed With Prejudice. ............... 6

    Judge Bissell Denies The Government's Rule 60(B) Motion
    And Its Motion For A Stay Pending Appeal In The Forfeiture Proceeding. .................. 7

    The Vacatur of the Government's Ex Parte Restraining Order. ..................................... 9

    The Fischer Firm's Attorney's Lien ............................................................................. 10

    Plaintiff's Application for a TRO and Preliminary Injunction ..................................... 11

ARGUMENT ..................................................................................................................... 11

    Plaintiff's Motion Should Be Denied With Respect to
    the Funds Subject to the Fischer Law Firm's Attorney's Lien ..................................... 11

CONCLUSION ................................................................................................................. 16

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Aetna Cas. and Sur. Co. v. Atom Foreign Auto Parts, Inc.*,
    116 Misc.2d 250 (Sup. Ct. Nassau County 1982) ........................................................ 12

*Banque Indosuez v. Sopwith Holdings Corp.*,
    98 N.Y.2d 34 (N.Y. 2002) ..................................................................................... 14-15

*Matter of City of New York*,
    5 N.Y.2d 300 (N.Y. 1959) ........................................................................................ 13

*Fliashnick v. Burke*,
    162 N.Y.S. 867 (1st Dep't 1917) ............................................................................... 12

*LMWT Realty Corp. v. Davis Agency Inc.*,
    85 N.Y.2d 462 (N.Y. 1995) .................................................................................. 13-15

*Spinello v. Spinello*,
    70 Misc.2d 521 (Sup. Ct. Nassau County 1972) ......................................................... 12

**STATUTES AND RULES**

18 U.S.C. § 981 .................................................................................................... 3, 6

18 U.S.C. § 984 ....................................................................................................... 3

18 U.S.C. § 1956(b) .............................................................................................. 6-7

28 U.S.C. § 2466 .................................................................................................. 5, 8

New York Judiciary Law § 475 .................................................................................. 11

Fed. R. Civ. P. 60(B) ............................................................................................. 7-9

Fed. R. Civ. P. Supp. Rule C(6) .................................................................................. 3

TO THE HONORABLE STUART M. BERNSTEIN,
UNITED STATES BANKRUPTCY JUDGE:

The Barry Fischer Law Firm LLC ("Fischer Law Firm") and Friedman Kaplan Seiler & Adelman LLP ("Friedman Kaplan") (collectively, the "Objectors"), solely on behalf of themselves,[1] file this objection to plaintiff's motion for a temporary restraining order and preliminary injunction (the "Motion") and petition this Court to enforce the Fischer Law Firm's attorney's lien, and state as follows:

## PRELIMINARY STATEMENT

1. Plaintiff seeks a temporary restraining order and preliminary injunction enjoining defendant Kesten Development Corp. ("Kesten") from transferring, distributing, or otherwise moving any of its assets located in the United States, including the $6,871,042.36 seized by the United States government in January 1999. Plaintiff seeks its injunction on the basis of a foreign default judgment issued on September 15, 2010 in the British Virgin Islands, on purported 14 days notice, for which it seeks recognition and enforcement in the United States. The restraint requested specifically would prohibit Kesten from "transferring any funds or assets subject to this Order for attorney's fees."

2. Plaintiff's motion should be denied with respect to a portion of the funds sought to be enjoined. The Fischer Law Firm holds an attorney's lien on the seized funds held by the government since 1999, plus accrued interest, in the amount of one-

---

[1] The appearance of the Fischer Law Firm and Friedman Kaplan is not to be construed as a general or special appearance in this proceeding on behalf of Kesten. We appear only in support of our charging lien upon one-third (1/3) (33.333%) of the amount restrained by the US Government together with accrued interest thereon.

third (1/3) of the total funds to be paid to Kesten. The lien arises from the extensive work performed by the Fischer Law Firm and Friedman Kaplan over many years of intensive litigation in *United States v. $8,221,877.16*, Civil Action No. 00 - 2667 (D.N.J.) and related actions against the U.S. government, which resulted in a favorable court order directing that the government return the corpus of the seized funds (i.e., $8,221,877.16) to Kesten. That litigation involved extraordinary effort and intensive briefing and argument on numerous legal issues, including a successful appeal to the Court of Appeals for the Third Circuit. Accordingly, by this objection, the Fischer Law Firm and Friedman Kaplan also petition this court to determine and enforce the Fischer Law Firm's lien.

3. The Fischer Law Firm's attorney's lien has priority over plaintiff's later-issued default judgment. Accordingly, any injunction issued to Kesten should not restrain or enjoin payment of 1/3 the proceeds to be returned to Kesten from the government as a result of plaintiff's successful representation. Those funds must be paid to the Fischer Law Firm to satisfy its valid attorney's charging lien.

## PROCEDURAL AND FACTUAL BACKGROUND

**The Government's Seizure Of The Funds.**

4. On January 13 and 14, 1999, the United States seized all of the funds then contained in two bank accounts maintained in New York by Kesten Development Corp. The first account (known as the "Venus" account), held at MTB Bank, was at its all-time high balance of $6,043,130.40; the second account (known as the "Tadeland" account), was maintained at European American Bank and contained $1,345,771.64. After execution of the seizure warrants, the government continued to

collect all of the money that was wired into the account at MTB. In particular, throughout 1999, the government made nine additional seizures totaling $827,911.96.

5. More than a year after it executed the warrants, on June 13, 2000, the United States commenced a civil forfeiture action in the District of New Jersey. The Verified Complaint for Forfeiture, styled *United States v. $8,221,877.16*, Civil Action No. 00 - 2667 (D.N.J.) (the "Forfeiture Proceeding"), sought the forfeiture of the $8,216,814.00 seized from the Venus and Forex accounts (the "Seized Funds").[2] The government's allegations, and the theory upon which it sought forfeiture, were relatively simple. The government claimed that the real owner of the accounts – Antonio Pires de Almeida ("Pires") – was laundering funds for narcotics traffickers. In particular, the complaint contended that certain couriers associated with narcotics traffickers had deposited substantial funds into the Venus and Tadeland accounts. Based on the allegations in the Complaint, the government sought forfeiture on two separate bases. First, the government contended that the seized funds were traceable to drug trafficking pursuant to 18 U.S.C. § 981(a). Second, the government argued that, even if the seized funds themselves could not be traced to drug trafficking, they were forfeitable under the fungible property statute, 18 U.S.C. § 984.

6. On July 18, 2000, pursuant to Supplemental Rule C(6) of the Admiralty Rules, Kesten and Turist-Câmbio Viagens e Turismo Ltda. ("Turist-Câmbio") (together, "Claimants") filed a Verified Claim to the Seized Funds. The Verified Claim

---

[2] The government also sought forfeiture of approximately $5,000 from an account in the name of Ramal Ventures at Israeli Discount Bank. Neither Kesten nor Turist-Câmbio had any interest in these funds and they filed no claim for their return.

3

was executed by Pires, who is the former owner of Turist-Câmbio and was the duly appointed representative for each Claimant.

7. Claimants then moved to dismiss the Verified Complaint on two principal grounds. First, they argued that the complaint did not set forth probable cause that the funds were traceable to narcotics trafficking. Second, they argued that statute of limitations precluded the government's reliance on the fungible property statute. The district court did not reach the merits of the motion dismiss. Instead, after vigorous briefing on various procedural issues under the Supplemental Rules for Certain Admiralty and Maritime Proceedings, the district court granted the government's motion, struck Claimants' claim and, on December 18, 2001, ordered the funds forfeited to the United States.

8. By order dated May 28, 2003, however, the Court of Appeals for the Third Circuit reversed the district court's judgment in its entirety. In particular, the Third Circuit held that the district court should not have struck the Claim; that the district court should have entertained the motion to dismiss; and that the government was not entitled to proceed under the fungible property statute. *See United States v. $8,221,877.16*, 330 F.3d 141 (3d Cir. 2003).

9. The Third Circuit did not enter judgment for the Claimants, however. Instead, noting that the district court had not yet had an opportunity to address the question whether the Complaint adequately pled that the seized funds could be traced to drug trafficking, the Third Circuit remanded the case for consideration of that single question. *See id.* On remand, the case was assigned to then-Chief Judge John W. Bissell of the District of New Jersey.

**Chief Judge Bissell Dismisses With Prejudice The Forfeiture Proceeding.**

10. After remand, the government sought permission from Judge Bissell to amend its complaint. In particular, the government averred that its original pleading had relied principally on the fungible property statute. Now that the Court of Appeals had remanded for consideration of whether the Complaint sufficiently alleged that the funds could be traced to drug trafficking, the government sought leave to augment those allegations. Judge Bissell gave the government that opportunity to further muster its evidence.

11. On December 16, 2003, the government filed its Amended Verified Complaint for Forfeiture (the "Amended Complaint"). That document purported to give greater substance to the allegations.

12. On January 27, 2004, Claimants moved to dismiss the Amended Complaint. The government cross-moved to strike Claimants' claim pursuant to the fugitive disentitlement statute, codified at 28 U.S.C. § 2466. In particular, the government contended that Pires was the real owner of the funds. And, since the government had since indicted him for money laundering, they argued that Claimants could not pursue their Claim to the funds as long as he remained in his native country of Brazil.

13. On July 6, 2004, after a searching and thorough review, Judge Bissell dismissed the Amended Complaint with prejudice and ordered the government to return the Seized Funds to Claimants. (A copy of the July 6, 2004 order and opinion are

5
920138.2

attached to the Stubbs Declaration as Exhibit 1.)[3] Although the government obviously had included every fact or innuendo it could muster in support of its theory, Judge Bissell held that the Amended Complaint did not contain sufficient facts to support a reasonable belief that the seized funds were forfeitable pursuant to 18 U.S.C. § 981. Because the Amended Complaint did not sufficiently allege a connection to drug trafficking, its assertions of money laundering did not satisfy the pleading requirements established by the Third Circuit in forfeiture cases pursuant to section 981. In addition, Judge Bissell denied the government's cross-motion to strike Claimants' claim pursuant to the fugitive disentitlement statute. The Court held that the Claimants were proper corporations, and that neither the person who executed the Claim nor the Claimants' majority shareholder was a fugitive. Thus the requirements of 28 U.S.C. § 2466 had not been met.

**The Government Files A Complaint Seeking A Civil Penalty Pursuant To 18 U.S.C. § 1956(b), Which Also Is Dismissed With Prejudice.**

14. Hedging its bet on the outcome of the forfeiture case, a month after filing its Amended Complaint for forfeiture, the government filed a related civil action under 18 U.S.C. § 1956(b) seeking a civil penalty of $26 million against Turist-Câmbio, Kesten, Pires and Roseli Ciolfi. In particular, in a complaint filed on January 12, 2004, the government argued that each of the four defendants violated the money laundering statutes by engaging in various financial transactions in 1997 and 1998.[4] *See United States v. Pires, et al.*, Civil Action No. 04-115 (JWB) (D.N.J.).

---

[3] References to "Ex. __" are to the exhibits attached to the Stubbs Declaration.

[4] The government never sought a restraining order of the Seized Funds pursuant to 18 U.S.C. § 1956(b)(3).

15. As in the Forfeiture Proceeding, the defendants in the section 1956(b) action moved to dismiss the government's complaint. On March 7, 2005, Judge Bissell granted the defendants' motion to dismiss the section 1956(b) action with prejudice as to all defendants. (Ex. 2.)

**Judge Bissell Denies The Government's Rule 60(B) Motion
And Its Motion For A Stay Pending Appeal In The Forfeiture Proceeding.**

16. The government appealed Judge Bissell's order dismissing the Forfeiture Proceeding with prejudice and directing the government to return the funds, and asked Judge Bissell to stay his order pending appeal. While both the appeal and the stay application were pending, the government moved pursuant to Fed. R. Civ. P. 60(b) to vacate the Court's July 6, 2004 opinion and order. Alleging both fraud and newly discovered evidence, the government reiterated its contention that the corporate Claimants – Kesten and Turist-Cambio – were not the real owners of the seized funds. Rather, the government contended, Pires himself was the true owner of the money.

17. In support of the Rule 60(b) motion, the government submitted three declarations or statements provided by Brazilian law enforcement authorities: a declaration made to Brazilian police by Turist-Câmbio's former accountant Paulo Jacinto Sposito; a declaration from Vladimir Aras, the same Brazilian prosecutor who provided the affidavit that the government submitted in support of its later *ex parte* application for the restraining order in the D.C. District Court; and a statement of a witness taken by Brazilian law enforcement officials in December 2003 at the Newark, New Jersey offices of the U.S. Bureau of Immigration and Customs Enforcement.

18. On December 2, 2004, Judge Bissell held that Claimants had proper standing to Claim the seized funds, and denied the government's Rule 60(b)

7

920138.2

motion. (Ex. 3.) Again, the Court ordered the government to return the funds to Claimants. (*See id.*) Seven days later, on December 9, 2004, the government withdrew its appeal of the July 6, 2004 Opinion and Order dismissing the Amended Complaint.[5] (Ex. 4.)

19. On January 31, 2005, the government filed a notice of appeal from the Court's order of December 2, 2004 denying relief under Rule 60(b). On June 30, 2005, the government withdrew that appeal of the December 2, 2004 order. (Ex. 5.)

20. On July 6, 2005 – the very last day permitted under the Rule – the government filed yet another second Rule 60(b) motion, resurrecting its arguments that Claimants were "dominated and controlled" by Pires and that their claim should be stricken under the fugitive disentitlement statute, 28 U.S.C. § 2466. The government also argued that the power-of-attorney given by the new owners of Turist-Cambio to Ciolfi, who executed the claim filed in response to the Amended Complaint, was somehow invalid.

21. In an opinion dated August 10, 2005, Judge Bissell rejected the government's newest motion. (Ex. 6.) In his opinion, Jude Bissell further held that, even if Pires were the real party in interest, the court still would have exercised its discretion to deny to the government's motion to strike the claim, "[b]ecause of the United States' patent inability to state a claim based upon the tracing statute (18 U.S.C. § 981)." (*Id.* at

---

[5] After December 8, 2004, the government's motion for a stay pending appeal was moot because the government had voluntarily dismissed its appeal of the July 6, 2004 order and there was no basis for a stay. Yet, on February 10, 2005, Judge Bissell denied on the merits the government's motion for a stay pending appeal. (Ex. 4.)

8

2.)  In other words, the district court held yet again that the government had no evidence upon which it could proceed to forfeit the seized funds.

22. On October 7, 2005, the government appealed Judge Bissell's denial of its second Rule 60(b) motion.  But, as with its other appeals in the Forfeiture Proceeding, on June 7, 2006, the government filed a notice withdrawing the appeal (Ex. 7), and on July 12, 2006, the Court of Appeals issued an order providing that the appeal was dismissed.  (Ex. 8.)

**The Vacatur of the Government's *Ex Parte* Restraining Order.**

23. On January 25, 2005, the government filed in the District Court for the District of Columbia an *ex parte* motion for a restraining order of the vast majority of the Seized Funds.  Although the government could have filed the application in New Jersey, before the federal judge who was most familiar with the facts of the case, the government chose not to do so.  On January 26, 2005, Judge Roy C. Lamberth of the U.S. District Court for the District of Columbia granted the government's motion in the miscellaneous proceeding entitled *United States of America, for and on behalf of the Federal Republic of Brazil v. Antonio Pires de Almeida, et al.*, Misc. No. 05-40 (D.D.C.) (Under Seal).  (Ex. 9.)

24. On September 22, 2010, the D.C. district court granted the government's application to vacate the restraint, based on a decision issued by the court of appeals for the D.C. Circuit entitled *In re Any and all funds or other assets in Brown Brothers Harriman & Co. Account No. 8870792 in the name of Tiger Eye Investments Ltd.*, No. 09-5065, 2010 WL 2794281 (D.C. Cir. July 16, 2010).  (Ex. 10.)  The *Tiger Eye* case made clear that the government had lacked any statutory basis for the restraint.

9
920138.2

25. Accordingly, the Seized Funds are now subject to Judge Bissell's July 6, 2004 order directing that they be returned to Claimants. As counsel for Claimants in the Forfeiture Proceeding, Barry Fischer has provided to the government the coordinates for the Fischer Law Firm's attorney trust account. However, to date, the government has not yet complied with Judge Bissell's order or returned the Seized Funds plus interest to Claimants' counsel. The Seized Funds are therefore still in the possession of the government, albeit in violation of a valid court order directing that they be disbursed to Kesten.

**The Fischer Firm's Attorney's Lien**

26. The Seized Funds, including accrued interest, are subject to a valid attorney's charging lien held by the Fischer Law Firm on behalf of itself and Friedman Kaplan. As explained in the Declaration of Barry R. Fischer, the Fischer Law Firm claims a charging lien on one third (1/3) or 33.333% of the Seized Funds and accrued interest thereon. Fischer Decl. ¶ 3-9. This charging lien arises from the Fischer Law Firm's and Friedman Kaplan's work described above, which commenced in 1999, and resulted in favorable orders issued in 2004 and 2005 directing a return to the Claimants of the entire amount of the Seized Funds. Fischer Decl. ¶ 3-4.

27. As explained in the Fischer Declaration, Kesten does not object to payment to its attorneys of one-third of the Seized Funds including interest. Fischer Decl. ¶ 8. Accordingly, the Fischer Law Firm and Friedman Kaplan hereby petition this Court to enforce the Fischer Law Firm's attorney's lien with respect to the Seized Funds.

**Plaintiff's Application for a TRO and Preliminary Injunction**

28. Plaintiff Richard Fogerty now seeks a TRO and preliminary injunction, in aid of his efforts to execute on the foreign default judgment obtained by TCB in the British Virgin Islands on September 15, 2010. That default judgment was obtained fourteen days after Kesten was purportedly provided with notice of TCB's action. TCB then commenced this adversary proceeding in an effort to obtain recognition and enforcement of its BVI default judgment against Kesten.

29. However, the Fischer Law Firm's attorney's lien has priority over the later-issued default judgment obtained by TCB in the BVI. Thus, even assuming that this Court has jurisdiction over Kesten to issue the proposed TRO or preliminary injunction, the Motion should be denied with respect to the funds necessary to satisfy the Fischer Law Firm's attorney's lien, and those funds should be ordered paid to the Fischer Law Firm.

**ARGUMENT**

**Plaintiff's Motion Should Be Denied With Respect to
the Funds Subject to the Fischer Law Firm's Attorney's Lien**

30. The Fischer Law Firm holds a valid attorney's lien pursuant to New York Judiciary Law § 475. In particular, Judiciary Law § 475 provides:

> From the commencement of an action, special or other proceeding in any court or before any state, municipal or federal department, except a department of labor, or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, judgment or final order in his client's favor, and the proceeds thereof in what-ever hands they may come; and the lien cannot be affected by any settlement between the parties before or after judgment, final order or determination. The court upon the

11
920138.2

petition of the client or attorney may determine and enforce the lien.

31. Here, the Fischer Law Firm holds an attorney's lien in the amount of one-third of the total recovery obtained on behalf of Claimants Kesten and Turist-Cambio. By this objection and petition, the Fischer Law Firm and Friedman Kaplan move for this Court to enforce the Fischer Law Firm's lien.

32. There can be no reasonable dispute that the Fischer Law Firm's attorney's lien takes priority over the TCB's later-issued default judgment. Under long-established New York law, the lien of an attorney for services rendered in an action is superior to the claim of a judgment creditor – like TCB here – levying execution. *Aetna Cas. and Sur. Co. v. Atom Foreign Auto Parts, Inc.*, 116 Misc.2d 250 (Sup. Ct. Nassau County 1982) (citing *Fliashnick v. Burke*, 162 N.Y.S. 867 (1st Dep't 1917)).

33. As New York courts have explained, an attorney's charging lien is a right which vests so that a lawyer who recovers money for his client will not be left uncompensated for his efforts. *See Spinello v. Spinello*, 70 Misc.2d 521, 525-526 (Sup. Ct. Nassau County 1972) (enforcing attorney's fee of ½ funds recovered). "Like the mechanic's lien, this principle recognizes the equitable notion that the agent responsible for the creation of an asset, or improvement of property, should have security for payment of his fees out of the very monies which would not exist but for his services." *Id.* Thus, the attorney's lien is regarded as an equitable assignment to the attorney of the funds produced by his efforts. *Id.* (citing 1 Carmody-Wait 2d, New York Practice, s 3:144). As to the fund resulting from the attorney's work, the attorney's lien enjoys a *paramount priority* over other claims. *Id.* A client's creditors, generally, may enforce

their claims only against the net portion of the judgment remaining after the amount of the attorney's lien has been paid. *See id.* at 526.

34. So, too, here, does the Fischer Law Firm's attorney's charging lien enjoy "paramount priority" over TCB's default judgment against Kesten which was issued less than two weeks ago. Indeed, but for the Fischer Law Firm's and Friedman Kaplan's *years* of effort only briefly described above, there would be no funds belonging to Kesten in the United States against which TCB could seek to enforce its judgment. However, due to the Fischer Law Firm's and Friedman Kaplan's extensive efforts, the government is now obligated, pursuant to Judge Bissell's July 6, 2004 order, to return all the Seized Funds, and accrued interest, to Kesten.

35. The New York Court of Appeals has explained that an attorney's charging lien is *more* than a priority of payment. It is a "vested property right created by law." *LMWT Realty Corp. v. Davis Agency Inc.*, 85 N.Y.2d 462, 465 (N.Y. 1995) ("Manifestly, then, an attorney's charging lien is something more than a mere claim against either property or proceeds; an attorney's charging lien 'is a vested property right created by law and not a priority of payment.'") (quoting *Matter of City of New York*, 5 N.Y.2d 300, 306 (N.Y. 1959)). Here, the Fischer Law Firm has a vested property right to payment of its legal fees from the Seized Funds.

36. Notwithstanding New York precedent to the contrary holding that an attorney's lien has paramount priority and is a vested property right, counsel for plaintiff has advised that he views his client's claim as having priority over the Fischer Law Firm's charging lien. Plaintiff's argument should be rejected. As the New York Court of Appeals has made clear, where an attorney's services create the fund at issue,

13

that attorney's charging lien must be given effect, even where a prior lien against the specific fund exists. *See LMWT Realty*, 85 N.Y.2d at 465. Here, of course, plaintiff's foreign default judgment – even if it is recognized in this Court – is *not* a prior lien, it was issued less than two weeks ago on September 15, 2010.

37. But even if plaintiff's foreign default judgment had vested prior to the Fischer Law Firm's lien (it did not), plaintiff's judgment still does not obtain priority over the Fischer Law Firm's charging lien, because the extraordinary efforts of the Fischer Law Firm and Friedman Kaplan created the fund against which plaintiff now seeks to enforce his judgment. *See id.* at 468. Under these circumstances, the Fischer Law Firm's lien must be paid prior to the claims of any other creditors seeking to satisfy a judgment against the same funds.

38. Nor can the plaintiff successfully argue that his judgment arises from the same transaction or contract, which might permit a set off of judgments prior to recovery of the Objectors' attorney's lien. *See*, *e.g.*, *Banque Indosuez v. Sopwith Holdings Corp.*, 98 N.Y.2d 34 (N.Y. 2002). In *Banque Indosuez*, the Court of Appeals permitted a setoff of judgments issued *in the same* action, based on *the same contract*, prior to enforcement of the attorney's charging lien. *Id.* at 43-44.

39. Here, by contrast, the foreign default judgment obtained by TCB against Kesten is totally unrelated to the transactions that formed the basis for the claims asserted by the government in the Forfeiture Proceeding. In the Forfeiture Proceeding, the government claimed that the Seized Funds were traceable to narcotics trafficking. *See supra* paragraphs 5-13. Of course, as a result of the extensive multi-year efforts of the Fischer law Firm and Friedman Kaplan, those claims were defeated and Judge Bissell

14

920138.2

ordered the Seized Funds returned to Kesten because the government was never able to trace the Seized Funds to drug trafficking. TCB never appeared in that action or asserted any claims. Indeed, plaintiff obtained its judgment in a foreign jurisdiction, the BVI, not in the District of New Jersey or in the District of Columbia.

40. Moreover, TCB's claims are arise from its assertions that a family named the Peiranos stole $130 million from TCB, and then purportedly laundered $15.9 million through Kesten's Venus account, which the Peiranos allegedly effected through a third party, Tansy, which supposedly transferred those funds to Kesten, "to obfuscate the theft of TCB's funds by the Peiranos." Pl. Br. at 9. This complicated series of purported transactions are totally unrelated to the government's allegations that the Seized Funds were proceeds of illegal narcotics trafficking. Moreover, plaintiff's counsel has admitted that he cannot trace the purportedly wrongfully transferred funds to Kesten. Under these circumstances, plaintiff cannot set off his judgment against the funds that Judge Bissell ordered returned to Claimants.

41. Indeed, the Court of Appeals explained in *Banque Indosuez* that "an attorney's charging lien maintains superiority over a right of setoff where the setoff is unrelated to the judgment or settlement to which the attorney's lien attached." 98 N.Y.2d at 43. Here, plaintiff's less than two-week-old judgment is unrelated to the Seized Funds that the Fischer Law Firm and Friedman Kaplan worked for years to return to Claimants. Accordingly, the Fischer Law Firm's attorney's lien maintains superiority over plaintiff's recent judgment.

42. Under settled New York authority, the Fischer Law Firm is entitled to enforce its attorney's charging lien on the Seized Funds when they are released by the

15

920138.2

government. Payment of those funds to satisfy the Fischer Law Firm's attorney's lien should not be enjoined or otherwise prevented in any manner. Accordingly, the Motion should be denied to the extent it seeks to restrain or otherwise prohibit Kesten from transferring the funds necessary to satisfy the Fischer Law Firm's attorney's charging lien.

## CONCLUSION

43. The Fischer Law Firm has a valid enforceable attorney's charging lien to one-third of the Seized Funds, including interest, that are to be returned by the government to Kesten. The Court should deny plaintiff's motion to the extent it seeks to enjoin such payment by Kesten as is necessary to satisfy the Fischer Law Firm's attorney's lien, and should order that such funds shall be paid to the Fischer Law Firm.

Dated: New York, New York
September 29, 2010

>FRIEDMAN KAPLAN SEILER &
> ADELMAN LLP
>
> */s/ Emily A. Stubbs*
> _____
> Emily A. Stubbs
> 1633 Broadway
> New York, NY 10019-6708
> (212) 833-1100
> *Pro se*
>
> -and-
>
> THE BARRY FISCHER LAW FIRM LLC
> Barry R. Fischer
> 550 Fifth Avenue, 6th Floor
> New York, NY 10036-5007
> 212-840-9300
> *Pro se*

920138.2